### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCUS JOHNSON,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 25-CV-3874** |
| | : | |
| **RAEPH LAUGHINGWELL,** *et al..* | : | |
| *Defendants* | : | |

### M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                         JULY 23, 2026

Plaintiff Marcus Johnson filed this *pro se* civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[1] alleging violations of his constitutional rights while housed as a pretrial detainee at the Philadelphia Federal Detention Center ("FDC"). In his complaint, he alleges that FDC doctors Raeph Laughingwell and Aaron Weaver delayed providing him with a continuous positive airway pressure ("CPAP") machine, which he required for obstructive sleep apnea. He also names as Defendants FDC Health Services Administrator Kevin Cassano and FDC Unit Manager Marlin Hoskinson.

Currently before the Court are Defendants' motion to dismiss, (ECF No. 18.), Plaintiff's reply, (ECF No. 21), and Defendants' reply (ECF No. 21). For the reasons set forth, the Court will grant the motion and dismiss the Complaint.

---

[1] "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[2]

In 2017, Johnson was diagnosed with obstructive sleep apnea and has since required the use of a CPAP machine nightly. (Compl. at 15.) Johnson was detained at the FDC on April 17, 2024, pending trial. (*Id*.) He met with medical professionals the following day and informed them about his chronic sleep apnea and need for treatment, including a CPAP machine. (*Id*.) He also met with Dr. Laughingwell twice in May 2024, and on both occasions, informed him that he needed a CPAP machine. (*Id*.) At the second meeting, Dr. Laughingwell informed Johnson that he received medical records for Johnson but did not receive a prescription for a CPAP machine. (*Id*. at 16.) When Johnson suggested that he be permitted an outside consultation, Dr. Laughingwell responded, "I'm trying to cut cost[s]." (*Id*.)

After experiencing elevated blood pressure readings, Johnson was seen by Dr. Weaver in June of 2024, who prescribed him medication for high blood pressure. (*Id*. at 16-17.) Dr. Laughingwell scheduled Johnson for a sleep study with an outside provider. (*Id*. at 17.) Johnson had an initial consultation with Jefferson University Hospital on December 10, 2024, and returned for the sleep study on January 15, 2025. (*Id*.) Dr. Weaver received the sleep study report on January 24, 2025, but did not order the CPAP machine right away. (*Id*.) Johnson was finally provided with a CPAP machine on March 13, 2025, nearly eleven months after he entered the FDC. (*Id*.) Johnson claims that during this period when he did not have a CPAP machine, he experienced elevated blood pressure, migraines, fatigue, dizziness, and other medical issues. (*Id*. at 20.)

Johnson also asserts allegations about his attempts to comply with the BOP's administrative remedy program ("ARP") and how Defendants allegedly interfered with those

---

[2]    Unless otherwise noted, the factual allegations are taken from the Complaint (ECF No. 2). The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

efforts. Specifically, on March 12, 2025, Johnson submitted a BP-8 "Informal Resolution Complaint" with Counselor Colon, who emailed it to Health Service Administrator Cassano. (*Id*. at 17.) The BP-8 addressed the denial of Johnson's request for a CPAP machine. (*Id*.) On March 18, 2025, Johnson asked Counselor Colon about the status of his BP-8 Informal Complaint and, on the next day, Colon gave Johnson the informal resolution form indicating that his issue was "resolved." (*Id*. at 18.) The form was signed by Colon and Hoskinson. (*Id*.) After Johnson inquired, Colon reported that Johnson's issues were "resolved per Def. Hoskinson and that [Johnson] could not file a formal grievance." (*Id*.) Johnson then emailed Hoskinson on March 24, 2025, expressing his desire to file a formal grievance, but Hoskinson did not respond. (*Id*.) However, Hoskinson then "allowed a similarly situated inmate access [to] the formal grievance process." (*Id*.) The other inmate was White, while Johnson is Black. (*Id*.)

Based on these allegations, Johnson asserts constitutional claims against Dr. Laughingwell, Weaver, and Cassano based on the delay in providing him with a CPAP machine. He also appears to assert a claim against Hoskinson for the alleged interference with the grievance process. He sues all Defendants in both their official and individual capacities. Johnson seeks money damages. (*Id*. at 5-6.) The Court previously granted Johnson leave to proceed *in forma pauperis* and directed service of his Complaint. (ECF No. 8.) Defendants filed a motion to dismiss the complaint (ECF No. 18), to which Johnson filed a Response in Opposition (ECF No. 20), and Defendants filed a Reply (ECF No. 21).

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d

3

176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp*., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

4

**III.    DISCUSSION**

### A.    *Official Capacity Claims*

Johnson asserts claims against Defendants — all federal employees — in their official capacities. To the extent that Johnson attempted to assert the official capacity claims as *Bivens* claims, they are dismissed. *Bivens* provides a remedy for certain constitutional violations committed by federal actors. However, "[a]n action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (*per curiam*); see *also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Accordingly, the claims against Defendants in their official capacities are in essence claims against the United States that must be dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver.").

Further, to the extent that Johnson attempted to bring a claim under the Federal Tort Claims Act ("FTCA"), the claims also fail. The FTCA "confers federal-court jurisdiction in a defined category of cases involving negligence committed by federal employees in the course of their employment." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006); *see also* 28 U.S.C. § 1346(b)(1). "As to claims falling within this jurisdictional grant, the FTCA, in a second provision, makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances . . . .'" *Id.* at 485 (quoting 28 U.S.C. § 2674). Before a plaintiff can

bring a FTCA lawsuit against the United States, the plaintiff must exhaust administrative remedies by presenting his claim to the appropriate federal agency.[3]  *See* 28 U.S.C. § 2675(a).  In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim."  *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); *see also Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018).  This requirement is "jurisdictional and cannot be waived."  *Shelton*, 775 F.3d at 569; *Wilson v. United States Gov't*, 735 F. App'x 50, 52 (3d Cir. 2018) (*per curiam*).  For this reason, a plaintiff "must . . . plead administrative exhaustion in an FTCA case" so that the Court may determine its jurisdiction.  *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011); *see also Hoffenberg v. United States*, 504 F. App'x 81, 83 (3d Cir. 2012) (*per curiam*) ("Under the FTCA, the plaintiff has the burden of establishing that a proper administrative claim has been presented.").  Johnson has not alleged facts about whether he presented an administrative tort claim to the Bureau of Prisons in accordance with the requirements of the FTCA prior to filing his lawsuit.  Accordingly, to the extent he intended an FTCA claim, the claim must also be dismissed.

### B.    *Individual Capacity Bivens Claims*

Johnson also asserts individual capacity claims against Laughingwell, Weaver, and Cassano based on allegations that they delayed providing him with a CPAP machine, and against Hoskinson based on allegations that he obstructed Johnson's efforts to administratively exhaust his claims under the Prison Litigation Reform Act ("PLRA").  These Fifth Amendment claims are properly analyzed under *Bivens*.[4]  Defendants argue that all individual capacity claims should be

---

[3]    This is accomplished by filing a Standard Form 95 with the proper agency. *See generally Bialowas v. United States*, 443 F.2d 1047, 1049-50 (3d Cir. 1971) (discussing Form 95); *see also* https://www.gsa.gov/system/files/SF95-07a.pdf (last accessed July 15, 2026).  It is an entirely different process than exhaustion under the PLRA.

[4]    Johnson also cites to the Eighth and Fourteenth Amendments.  (*See* Compl. at 3, 5.) However, because he was a pretrial detainee in federal custody during a portion of the events alleged, the

dismissed because they are not cognizable under *Bivens*.[5]

As noted above, *Bivens* provides a damages remedy for constitutional violations committed by federal actors in very limited circumstances. *Egbert v. Boule*, 596 U.S. 482, 486 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 131, (2017).[6]  Since *Bivens* was decided in 1971, the Supreme Court has expressly recognized an implied cause of action against federal officials in only three types of cases, *see Abbasi*, 582 U.S. at 131, and "has repeatedly refused to recognize *Bivens* actions in any new contexts." *Vanderklok*, 868 F.3d at 199; *see also Egbert*, 596 U.S. at 486, 501-02.

The three types of cases with an implied private right of action under *Bivens* are:  (1) *Bivens* itself, which recognized an implied cause of action for violation of the Fourth Amendment's right

_____

Due Process clause of the Fifth Amendment governs his claims.  *See Bistrian v. Levi*, 912 F.3d 79, 91 & n.19 (3d Cir. 2018) (explaining that the Fifth Amendment governs claims brought by pretrial detainees in federal custody), *abrogation on other grounds recognized by Fisher*, 115 F.4th at 204.  Johnson also cites to the First Amendment, which protects an individual's rights to free speech, religious activity, and to petition government for redress of grievances.  The substance of any First Amendment claim Johnson intends to assert is unclear from the Complaint.

[5]      Defendants also argue that Johnson failed to exhaust his administrative remedies under the PLRA because (1) he failed to comply with the deadlines in the BOPS's ARP system and failed to completely exhaust his denial of medical care claims, and (2) did not initiate a grievance process regarding Hoskinson's alleged interference with his exhaustion efforts.  PLRA exhaustion is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Gedeon v. Attorney General*, No. 22-3595, 2025 WL 823952, at *2 (E.D. Pa. Mar. 14, 2025) (quoting *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018)).  The failure to exhaust is excused "under limited circumstances when it is clear that a prison's grievance procedure is unavailable to the prisoner," such as when "prison officials thwart[] inmate efforts to file grievances." *Smith v. Maiorana*, 629 F. App'x 402, 404 (3d Cir. 2015) (*per curiam*).  Johnson alleges that he could "not appeal" is initial informal grievance because he was denied the forms and because the "informal process was deemed "resolved." (Compl. at 20.)  He further alleges that specifically requested ARP grievance forms from Hoskinson but was denied the ability to proceed. (*See id*.)  Liberally construing these allegations and resolving all inferences in Johnson's favor, the Court finds that, at this early stage of the case, Defendants have not met their burden of demonstrating their affirmative defense.  Regardless of whether exhaustion is excused, however, Johnson's claims are dismissed because, as explained herein, *Bivens* does not offer a remedy.

[6]      Historically, federal law has provided a damages remedy to individuals whose constitutional rights were violated by *state* officials.  *See* 42 U.S.C. § 1983.  In *Bivens,* the Supreme Court for the first time implied such a cause of action for constitutional violations by federal officials, holding that "even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the [Fourth Amendment] prohibition against unreasonable search and seizures." *Abbasi*, 582 U.S. at 131.

against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against prison officials for inadequate medical care in the prison context under the Eighth Amendment. *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022); *see also Abbasi*, 582 U.S. at 131 ("These three cases - *Bivens*, *Davis*, and *Carlson* - represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."). Since 1980, the Supreme Court has repeatedly declined to extend *Bivens* to cover other constitutional violations. *Goldey v. Fields*, 606 U.S. 942, 942 (2025) (*per curiam*). These cases "have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 942-43 (internal quotation omitted); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided, . . . the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

The Supreme Court has "set forth a two-step inquiry to determine the availability of *Bivens* remedies in a particular case." *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024). First, the Court must consider whether "the 'case presents a new *Bivens* context' — *i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court"— using only *Bivens*, *Davis*, and *Carlson* as a benchmark as well as a "broad" understanding of what constitutes a new context. *Id.* (quoting *Abbasi*, 582 U.S. at 139). The non-exclusive list of factors to consider here includes:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

8

*Id.* (quoting *Abbasi*, 582 U.S. at 139-40).  "Whether a context is new is an 'easily satisfied' test because 'a modest extension of the *Bivens* action is still an extension[,]'" meaning "[e]ven 'significant parallels to one of the Supreme Court's previous *Bivens* cases' may not be enough." *Henry v. Essex County*, 113 F.4th 355, 361 (3d Cir. 2024) (cleaned up) (quoting *Abbasi*, 582 U.S. at 147-49); *Fisher*, 115 F.4th at 206 ("[A] case can differ meaningfully from *Bivens, Davis*, and *Carlson* even when it involves the same constitutional right as one of those cases.").

If the context is new, courts proceed to the second step of the inquiry, which asks whether there are special factors indicating that "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  *Goldey*, 606 U.S. at 944 (cleaned up) (citing *Egbert*, 596 U.S. at 492).  This analysis is "anchored in separation-of-powers principles."  *Id.* (citing *Abassi*, 582 U.S. at 135).  In *Egbert*, the Supreme Court observed that the two-part test "often resolve[s] to a single question" of "whether there is any reason to think that Congress might be better equipped to create a damages remedy."  596 U.S. at 492; *see also Muniz v. United States*, 149 F.4th 256, 261 (3d Cir. 2025) ("[I]n *Egbert v. Boule*, the Supreme Court clarified that a new context arises even under the first step when potential special factors that previous *Bivens* cases did not consider are presented and those factors counsel hesitation -- extending a step-two-like special factors analysis to the first step.") (internal quotations and citations omitted).  The United States Court of Appeals for the Third Circuit distilled *Egbert* to require the following:  "unless a case is indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts."  *Fisher*, 115 F.4th at 205.

### 1.    *Johnson's Bivens Claims Present a New Context*

Johnson alleges that Laughingwell, Weaver, and Cassano failed to provide him with timely medical treatment (a CPAP machine) in violation of his Eighth Amendment rights.  In considering

whether Johnson's claims against Laughingwell, Weaver, and Cassano present a new context, *Carlson* is most relevant. *Carlson* involved constitutional claims brought by a prisoner's estate against federal prison officials for failure to provide adequate medical treatment leading to the prisoner's death.[7] 446 U.S. at 17 n.1. The *Carlson* court "held that the Eighth Amendment Cruel and Unusual Punishments Clause gave [the prisoner's estate] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 582 U.S. at 131.

However, Johnson's medical damages claims against Laughingwell, Weaver, and Cassano differ from *Carlson* in several ways. First, *Carlson* involved a claim arising under the Eighth Amendment where Johnson's claims arise under the Fifth Amendment. Although Johnson cites the Eighth Amendment, the Fifth Amendment applies here because he was a pretrial detainee held in a detention center during the events giving rise to his claims. *See Bell v. Wolfish*, 441 U.S. 520, 530, 541 (1979) (applying the Fifth Amendment to claims challenging conditions of pretrial detention). The Supreme Court has noted this distinction in the first step of the *Bivens* analysis, ultimately declining to extend *Bivens* to claims of detainee mistreatment. *See Abbasi*, 582 U.S. at 148 ("The constitutional right is different here, since *Carlson* was predicated on the Eighth Amendment and this claim is predicated on the Fifth."). The distinction between a medical

---

[7]     The complaint in *Carlson* alleged that prison officials:

> being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of [the prisoner's] chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that [the prisoner's] death resulted from these acts and omissions, that petitioners were deliberately indifferent to [his] serious medical needs, and that their indifference was in part attributable to racial prejudice.

446 U.S. at 17 n.1.

damages claim of a prisoner arising under the Eighth Amendment and a medical damages claim of a pretrial detainee arising under the Fifth Amendment is significant for purpose of considering whether a claim presents a new context. *See Marquez v. C. Rodriguez*, 81 F.4th 1027, 1032 (9th Cir. 2023) (holding that failure to protect claim brought by a pretrial detainee under the Fifth Amendment was meaningfully different than *Carlson*); *see also Stanard v. Dy*, 88 F.4th 811, 818 (9th Cir. 2023) ("There is little doubt that Stanard's Fifth Amendment claim [challenging the quality of medical care he received as a detainee] does present a new context."); *Johnson v. Terry*, 119 F.4th 840, 857 (11th Cir. 2024) ("Johnson's claim based on the medical care he received after being attacked by Phillip is predicated on a different constitutional right than the one in *Carlson* . . . . That alone is enough for the claim to present a new context.").

Courts in this Circuit have similarly concluded that medical damages claims brought by pretrial detainees are meaningfully different from the claims in *Carlson* and, thus, present a new context. *See, e.g.*, *Dynlacht v. Laughingwell*, No. 25-5277, 2025 WL 3026263, at *6 (E.D. Pa. Oct. 29, 2025) ("Consistent with these cases and the approach taken by most courts that have recently considered the issue, the differences between the relevant constitutional provisions and realities of confinement pertaining to pretrial detainees and those pertaining to convicted and sentenced prisoners present a new *Bivens* context."); *Hammond v. Acerno*, No. 21-3688, 2025 WL 1194476, at *6 (E.D. Pa. Apr. 23, 2025) ("Hammond's status as a pretrial detainee, rather than a convicted prisoner like the inmate in *Carlson*, indicates that a different constitutional right is implicated than that in *Carlson* — the Fifth Amendment. The distinct constitutional postures give the Court pause, indicating that a new context is present here.") (internal citations omitted), *aff'd*, No. 25-2022, 2026 WL 1766139 (3d Cir. June 18, 2026).

11

Second, "the nature and severity of the circumstances at issue also distinguish the instant matter from *Carlson*." *Hammond*, 2025 WL 1194476, at *6 (explaining that the plaintiff's fainting caused by elevated stress after he was not permitted to take his anxiety and pain medication was meaningfully different than *Carslon*'s circumstances, which were the "repeated denial of medical treatment for an asthmatic prisoner ultimately resulting in the prisoner's death"). In *Carlson*, prison officials failed to provide "competent medical attention for some eight hours" while Carlson suffered from a life-threatening asthma attack, ultimately resulting in his death. *See Carlson*, 446 U.S. at 671. Without minimizing the seriousness of Johnson's obstructive sleep apnea, the nature and severity of his injuries — migraines, high blood pressure that was treated with medication, dizziness — differ meaningfully from the injuries in *Carlson*. *See Hammond*, 2025 WL 1194476, at *6; *see also Dynlacht*, 2025 WL 3026263, at *7 (finding that the medical circumstances at issue in plaintiff's claims — chronic, non-emergent medical conditions and non-life threatening injuries — provided a meaningful difference from the facts in *Carlson*). Further, another difference is that Johnson describes his sleep apnea as "chronic" (*see* Compl. at 15), as opposed to requiring the emergent treatment in *Carlson*. *See Pinson v. United States*, No. 17-0584, 2025 WL 2446292, at *4-5 (M.D. Pa. Aug. 25, 2025) ("[T]he provision of chronic medical care is a specialized activity requiring a high degree of training and qualification, which courts are ill-equipped to regulate, particularly in the prison context.") (internal quotations and citations omitted).

Third, the passage of the Prison Litigation Reform Act ("PLRA") and the existence of the BOP's ARP, both of which post-date *Carlson*, are special factors that render Johnson's claims a new context because they were not considered by the Supreme Court. *Johnson*, 119 F.4th at 858 ("[W]e find that the context of these claims is different from the context of the claim in *Carlson* because there the Court did not consider whether there were alternative remedies under the current

12

alternative remedy analysis."); *Muniz*, 149 F.4th at 264 ("Since the BOP ARP did not factor into the Supreme Court's remedial analysis in *Carlson*, the availability of that mechanism to Muniz creates a new context at the first step."); *Kalu*, 113 F.4th at 328 ("Because the PLRA and the BOP's remedy program are 'features that were not considered' by the Supreme Court when it decided *Carlson*, they present an additional reason to conclude that Kalu's claim arises in a new context." (quoting *Abbasi*, 582 U.S. at 148)).

Accordingly, Johnson's claims against Laughingwell, Weaver, and Cassano are distinguishable from those at issue in *Carlson* and, thus, present a new *Bivens* context. *See Fisher*, 115 F.4th at 205 ("[U]nless a case is indistinguishable from *Bivens*, *Davis*, or *Carlson*, a damages remedy may be created by Congress, but not by the courts.").

Turning to Johnson's *Bivens* claim against Hoskinson, the claim is based on allegations that Hoskinson interfered with or prevented him from completing the ARP claim exhaustion for his medical damages claims. The circumstances alleged — namely that Hoskinson denied him ARP paperwork, prevented him from filing a formal grievance, but permitted a "similarly situated White inmate" to file a grievance related to obtaining a CPAP machine — bears no resemblance to the three limited types of *Bivens* claims recognized in *Bivens*, *Davis*, and *Carlson*. Accordingly, Johnson's *Bivens* claims against Hoskinson also present a new *Bivens* context. *See Fisher*, 115 F.4th at 205 (concluding that a plaintiff may only recover under a Bivens theory when his case "is indistinguishable from *Bivens*, *Davis*, or *Carlson*").

### 2.    *Special Factors Counsel against Extending Bivens*

Turning to the second step in the analysis, the Court considers whether special factors preclude the extension of a *Bivens* remedy to Johnson's claims. Several special factors counsel against extending *Bivens* here. Most notably, the existence of the BOP's ARP "precludes a *Bivens*

13

remedy." *Fisher*, 115 F.4th at 208.  The Third Circuit has clarified that, "[i]n addition to creating a new context at step one, the BOP ARP forecloses the need to fashion a new, judicially crafted cause of action at the second step as well." *Muniz*, 149 F.4th at 264 (cleaned up).  The Third Circuit noted that the "effectiveness of the BOP ARP is, at best, dubious." *Id.*  However, "in the step-two *Bivens* analysis, alternative remedies need not 'provide complete relief.'" *Id*. (quoting *Egbert*, 596 U.S. at 493).  "Rather, so long as Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure, then bedrock principles of separation of powers foreclose[ ] judicial imposition of a new substantive liability." *Id*. (internal quotation marks and citations omitted).  The Circuit concluded that Muniz's *Bivens* claim failed because an alternative remedy existed and was made available to him.  Similarly, the availability of the BOP ARP to Johnson is a special factor that precludes the extension of *Bivens* to his claims.

Although the Third Circuit expressed in *Muniz* that *Carlson* relief remains available to inmates in limited circumstances, such as where "prison administrators thwart inmates from taking advantage" of the BOP ARP and render the administrative process unavailable as a remedy, *see Muniz*, 149 F.4th at 265, this limited exception has been called into question by a subsequent non-precedential Third Circuit opinion and, in any event, would not apply in Johnson's case.  In *Fields v. Federal Bureau of Prisons*, No. 24-2329, 2025 WL 2409060, at *2 (3d Cir. Aug. 20, 2025) (*per curiam*), the Third Circuit considered an inmate's allegation that prison officials had thwarted his attempts to use the BOP ARP by failing to provide him with necessary grievance forms and legal papers.  The Third Circuit found that the existence of an alternative remedial structure counseled against extending *Bivens*, even assuming prison employees did not afford the plaintiff adequate opportunities to utilize the prison's grievance system.  *Id.* at *3 (citing *Goldey*, 606 U.S. at 944-45; *Egbert*, 596 U.S. at 497-98 ("[W]e have never held that a *Bivens* alternative must afford rights

14

to participation or appeal.").)  The Third Circuit noted that, in the special factors analysis, "the focus is not on the individual's recovery at all but rather on the fact that Congress created a remedial process that it found sufficient to deter unconstitutional action against prisoners."  *Id.* (cleaned up) (citing *Xi*, 68 F.4th at 837).  Therefore, despite Johnson's allegations that Hoskinson failed to provide him with grievance forms, the availability of the BOP ARP precludes a *Bivens* remedy in this case.  Moreover, Johnson's efforts were not entirely thwarted.  Although he was unable to *fully* exhaust his claims through the administrative process, as he alleges, he was able to file an informal grievance and ultimately obtain a CPAP machine.  Simply because his informal grievance was marked "resolved" (Compl. at 18), possibly foreclosing the availability of further appeals, does not mean that he was entirely prevented from seeking a remedy.

Other special factors counsel against extending *Bivens*.  In addition to the BOP ARP, the availability of the FTCA provides an alternative remedial structure for inmates who claim they have been denied adequate medical care.  *See Perez v. Merendino*, No. 23-23431, 2025 WL 3771267, at *17 (D.N.J. Dec. 31, 2025) ("The availability of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*., also constitutes a special factor in inadequate medical care cases.").  In addition, Congress's "omission of a cause of action against individual officials" in the PLRA suggests that Congress did not intend to create a remedy for constitutional claims beyond *Carlson*.  *Kalu*, 113 F.4th at 335-36.  Furthermore, "[t]he Supreme Court has long recognized that, because 'the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches,' separation of powers and federalism concerns support conferring 'wide-ranging deference' to prison administrators' policy and operational decisions," which suggests courts are not well suited to fashion remedies in this context.  *Id.* at 336.

15

In sum, Johnson's claims are foreclosed by the presence of special factors indicating that Congress is best equipped to fashion a damages remedy for his claims. Accordingly, the Court may not imply a *Bivens* remedy, and Johnson may not proceed with his claims.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Johnson's Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Johnson will not be given leave to amend because he cannot cure the deficiencies in his claims. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that complaints should be denied with leave to amend "unless amendment would be inequitable or futile").

An Order follows, which shall be docketed separately. Fed. R. Civ. P. 58(a).

*NITZA I. QUIÑONES ALEJANDRO, J.*

---

[8] Because the Court concludes that a Bivens remedy is not available to Johnson, it need not consider Defendants' argument that Johnson, nevertheless, fails to state plausible constitutional claims against Cassano and Hoskinson.